UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Jacqueline Johnson, Individually, | : |
| Plaintiffs, | : |
| v. | : Case No. |
| Allegiant Air, LLC, A Nevada Corporation, | : |
| Defendant. | : |

# COMPLAINT
(Injunctive Relief Demanded)

Plaintiff, Jacqueline Johnson, Individually, on her behalf and on behalf of all other individuals similarly situated, (sometimes referred to as "Plaintiff"), hereby sues the Defendant, Allegiant Air, LLC, A Nevada Corporation, (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff is a resident of Pooler, Georgia, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff has struggled with post-traumatic stress disorder ("PTSD") since August 2021, after experiencing significant harassment and menacing from her former son-in-law, who is now

deceased by violent gunshot suicide (9/29/2021). Plaintiff's PTSD causes her to become agitated and experience anxiety in unfamiliar, tense, or stressful settings.

2. Plaintiff is a doctoral-level licensed clinical social worker and has struggled with nightmares, panic attacks, and hypervigilance since 8/21/2021 to present. Colleagues of hers in the mental health field have supported her diagnosis of PTSD.

3. Plaintiff acquired her service dog "Mischa" in 2016 and had her enrolled in and complete Basic Obedience and Manners puppy training service animal training at Top Notch Dog Training in Wappinger Falls, NY in 2017. This training was extensive and entailed the following: dog manners, impulse control, leash walking, response to commands, reinforcing attention span, and greeting guests, and distinguishing strangers. Plaintiff personally began to train Mischa to complete certain tasks to assist her with her PTSD in October 2021, and then registered Mischa as a service dog in January 2022. Specifically, Plaintiff trained Mischa to detect Plaintiff's signs of anxiety before the anxiety escalates to a panic attack and detect when someone is outside of an entrance door before the person approaching has knocked or rung a doorbell, and proactively preventing a PTSD episode. Mischa was fully trained to perform these tasks by 12/31/2021. See Mischa's US Service Dog registry certificate attached hereto as Exhibit A.

4. The ADA is a comprehensive civil rights law enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

5. One is "disabled" under the ADA if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g); see also Carothers v. County of Cook, 808 F.3d 1140, 1147 (7th Cir. 2015). The ADA defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

6. Plaintiff's PTSD substantially limits her major life activities such as concentrating, thinking, and communicating. See 42 U.S.C. § 12102(2)(A). It should be noted that the phrase "substantially limits" "is not meant to be a demanding

standard" and determining "whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. §§ 1630.2(j)(1)(i), (iii). Additionally, the "term 'substantially limits' shall be construed broadly and in favor of expansive coverage[.]" Id. § 1630.2(j)(1)(i). PTSD itself is an impairment that will "virtually always be found to impose a substantial limitation on a major life activity." Id. § 1630.2(j)(3)(ii). Indeed, "it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: ... post-traumatic stress disorder ... substantially limit[s] brain function." Id. § 1630.2(j)(3)(iii). See also, 29 C.F.R. § 1630.2(j)(1)(iii) ("The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity.").

7. A service animal is defined as any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. 28 C.F.R. § 35.104.

8. Despite the fact that Mischa is a fully-certified service dog as discussed *supra*, it should be noted that the bar for demonstrating a genuine issue of fact

regarding a dog's status as a service animal is not a high one. Cordoves, 92 F. Supp. 3d at 1230. "There are no requirements as to the amount or type of training that a service animal must undergo, nor the type of work or assistance that a service animal must provide, but the animal must be trained to perform tasks or do work for the benefit of a disabled individual." Rose v. Springfield-Greene Cnty. Health Dep't, 668 F. Supp. 2d 1206, 1214-15 (W.D. Mo. 2009); accord Green, 994 F. Supp. at 1256; Vaughn, 2009 U.S. Dist. LEXIS 20747, 2009 WL 723166, at *10. "This is not a taxing requirement, ... and there are no federally-mandated animal training standards." Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua, 304 F. Supp. 2d 1245, 1256 (D. Haw. 2003).

9. Plaintiff's PTSD causes her to become agitated, and experience feelings of anxiety in unfamiliar, tense, or stressful situations such as solo air travel and hotel stays. As a result, Mischa has been trained to perform specific tasks to ameliorate the anxiety and agitation Plaintiff experiences in certain settings due to her PTSD.

10. Plaintiff's PTSD also causes her to have panic attacks. As a result, Mischa has been trained to minimize and alleviate these attacks by lowering her heart rate via specialized techniques. See, Cordoves, 92 F. Supp. 3d at 1231 (sufficient evidence existed to qualify dog as a service animal where it: detected PTSD-related panic attacks; alerted plaintiff using various techniques; minimized

and alleviated panic attacks by lowering her heart rate via those techniques; and impacted the frequency with which the attacks occurred).

11. The regulations implementing the ADA provide that PTSD is an impairment that substantially limits brain function. 28 C.F.R. § 35.108(d)(2)(iii)(K). People v. Tapley, 2020 IL App (2d) 190137, P1, 2020 Ill. App. LEXIS 863, *1

12. In the context of ADA discrimination claims pertaining to service animals in particular, "'discrimination' is defined as, among other things, 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). The Department of Justice has issued regulations stating that, "generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability.' 28 C.F.R. § 36.302(c)(1). By this regulation the Department of Justice intended that 'the broadest feasible access be provided to service animals in all places of public accommodation . . ..' 28 C.F.R. Pt. 36, App. B at 697." Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 843 (9th Cir. 2004).

13. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA,

28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, leases or leases to is known as Allegiant Travel Company operating out of the Savannah / Hilton Head International Airport (SAV) located at 400 Airport Avenue, Savannah, GA 31408, and is located in the County of Chatham.

14. Venue is properly located in the Southern District of Georgia because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

15. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201.

16. As the owner, lessor, lessee, or operator of the subject airline, Defendant is required to comply with the ADA.

17. Failure to comply with these requirements constitutes a violation of the ADA.

18. On 1/14/2022, Plaintiff traveled by air, via Defendant airline, from Savannah, GA to Newark, NJ. Prior to this flight, on 1/7/2022, Plaintiff emailed Defendant through its website in an attempt to secure confirmation that Plaintiff would be allowed to travel with her service dog. However, other than an automated

"Thank you for your email", Defendant never responded to Plaintiff's email. On 1/14/2022 (the day of the flight), Plaintiff attempted to contact Defendant, via its online chat feature, to again attempt to secure confirmation that Plaintiff would be allowed to travel with her service dog. However, due to Defendant's apparent technical difficulties, no such confirmation (or denial) could be obtained. Plaintiff next attempted to obtain such confirmation by phone, but Defendant did not answer her call.

19. On 1/14/2022, Plaintiff arrived at the airport 2 hours early and showed Defendant's ticket agent her completed Air Carrier Access Act (ACAA)/USDOT form, US Service Dog registry certificate and ID cards (collectively "Service Dog Documentation"). The ticket agent confirmed that Plaintiff could fly with her service dog on her lap.

20. At the gate, Plaintiff again presented the Service Dog Documentation. Defendant's representative then contacted Defendant's ACAA department. ACAA denied Plaintiff's service dog request because Plaintiff checked a dog cage/carrier at the counter. The representative stated that they didn't consider a dog to be a service animal. They further stated that "service animals need to be on your person at all times; only pets have carriers".

21. Defendant's representative then charged Plaintiff a $50 pet travel fee and refused to allow Plaintiff onto the plane unless Mischa was secured in the carrier.

22. Defendant's representative then refused to allow Plaintiff to sit in an extra legroom seat, for which Plaintiff had already paid, due to her having a "pet" in a carrier.

23. During the flight, Mischa had seizure mid-flight due to being confined under a seat in a carrier. Mischa is trained to be on Plaintiff's lap. She is trained to be in a carrier when moving, not for keeping.

24. Mischa ended up being sick and vomited later that day, due to her seizure.

25. After arriving in New York City, Plaintiff called Defendant's customer service to complain. After waiting on hold for two hours and 45 minutes, Plaintiff was refunded the extra expense she incurred for the extra legroom space. Said representative advised Plaintiff to resend the ACAA/USDOT form via email for her 1/17/22 return flight which she did.

26. Allegiant responded on 1/14 via e-mail, 11:4 pm with:

> Our records indicate that your request to travel with a dog as a fully task trained service dog was denied due to non-compliance with Allegiant's Service Animal policy. Allegiant welcomes passengers traveling with a service animal who provide credible and verifiable information.

The U.S. Department of Transportation created one (1) service animal form for all air carriers to utilize, which requires the passenger using a task trained service dog to provide details on the dog and Allegiant requires this form to be fully completed and submitted at least 48 hours prior to scheduled departure. Allegiant does not have a record of receiving the USDOT form at least 48 hours prior to departure, as required.

The required DOT form was not provided 48 hours prior to travel but was shown to an Allegiant airport agent on the day of travel. Unfortunately, the information provided on the form was not credible or verifiable and Allegiant did not accept the animal as a service animal.

We verify all information provided on the USDOT form, review travel history and previous correspondence prior to providing the required approval. Our records also show multiple recent flights without your animal. If your animal is not healthy enough to travel in a carrier for your return flight we can cancel it for a refund.

The Department of Transportation (DOT) requires air carriers to notify a passenger, in writing, when their request for disability accommodations have been denied and either admit or deny a violation of Title 14 CFR Part 382. Allegiant denies a violation, as the form was not credible or verifiable. In addition, we are required to inform you of your right to pursue enforcement action, if you wish.

For any future travel, please refer to our website under Travel Info/FAQs for Traveling with Pets for pertinent information on bringing a small dog as a pet in cabin. Allegiant understands the importance and comfort our pets provide during air travel. For this reason, we have lowered the cost of our pet rate to $50.00 per flight.

27. On Monday 1/17/2022, Plaintiff arrived at Newark Airport 2 hours in advance of her scheduled departure. Plaintiff again paid the $50 pet fee, as Allegiant had denied her again – although they received the required form more than 48 hours in advance. The pet carrier was approved for size.

28. At the gate, Defendant's representative wouldn't allow Plaintiff on the plane because the zipper on the carrier was broken and wouldn't zip fully. It should be noted that Mischa was tethered inside the carrier and could not get out.

29. As a result, Plaintiff had to then retrieve her suitcase, rent a car, and drive herself home alone from Newark, NJ to Savannah, Georgia – a 12 hour ride.

30. Plaintiff was deprived full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the airline, in violation of 42 U.S.C. Section 12182(a), as a result of the Defendant's failure to comply with the applicable standards promulgated by the Department of Justice pursuant to the ADA. These violations include, but are not limited to:

   i. Defendant fails to adhere to a policy, practice and procedure to ensure that all goods, services and facilities are readily accessible to and usable by the disabled.

   ii. Defendant fails to maintain its features to ensure that they are readily accessible and usable by the disabled.

iii. Plaintiff has flown as a customer with the subject airline which forms the basis of this lawsuit and plans to avail herself of the services offered by the subject airline again in the future. The Plaintiff encountered barriers at the subject airline which discriminate against her on the basis of her disability.

31. Plaintiff intends to fly back to New York City again in August-September 2022. However, Plaintiff is continuously aware of the violations at Defendant's airline and is aware that it would be a futile gesture to use Allegiant Air again as long as the same violations exist unless she is willing to suffer additional discrimination.

32. The violations present at Defendant's facility infringe Plaintiff's right to travel free of discrimination.  Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's airline. By continuing to operate a place of public accommodation with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions at Defendant's airline and knowing that it would be a futile gesture to return unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting the

same airline readily available to the general public and is deterred and discouraged from additional travel. By maintaining a public accommodation with violations, Defendant deprives plaintiff the equality of opportunity offered to the general public.

33. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA.

34. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this airline as described but not necessarily limited to the violations identified in this Complaint. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to use Allegiant Airlines again not only to avail herself of their services but to assure herself that it is in compliance with the ADA so that she and others similarly situated will have full and equal enjoyment of the airline without fear of discrimination.

35. The Defendant has discriminated against the Plaintiff by denying her access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the subject property, as prohibited by 42 U.S.C. § 12182 et seq.

36. Defendant has discriminated against the Plaintiff by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation/commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

37. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

38. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its policies and procedures to make those facilities readily accessible and

useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

    a.    The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

    b.    Injunctive relief against the Defendant to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

    c.    An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

    d.    Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully Submitted,

*/s/ Tristan W. Gillespie*
Tristan W. Gillespie, Esq.

600 Blakenham Court
Johns Creek, GA 30022
Tel:   404.276.7277
gillespie.tristan@gmail.com